```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
AYRTON CAPITAL LLC,                                              :
                                                                 :
                            Plaintiff,                           :
                                                                 :            24-cv-5160 (LJL)
            -v-                                                  :
                                                                 :          MEMORANDUM AND
BITDEER TECHNOLOGIES GROUP,                                      :               ORDER
                                                                 :
                            Defendant.                           :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/07/2025

LEWIS J. LIMAN, United States District Judge:

Plaintiff Ayrton Capital, LLC ("Plaintiff") moves, pursuant to Federal Rule of Civil Procedure 37(c), to compel the production of documents from Defendant Bitdeer Technologies Group ("Defendant"). Dkt. No. 42. The motion is granted.

Plaintiff alleges that Defendant breached a term sheet between the parties pursuant to which Defendant agreed that it would not solicit, negotiate, or accept any proposals with respect to a "financing transaction" for a period of thirty business days following the date Plaintiff and Defendant agreed in writing to cease negotiations and that it would give Plaintiff the right to participate for 25% of any "third party transaction" reached in violation of that exclusivity provision. *See generally* Dkt. No. 1. The Term Sheet is dated April 26, 2024. Dkt. No. 45-1. Defendant provided a notice of termination to Plaintiff on May 13, 2024, which would create a termination date of June 26, 2024. Dkt. No. 1 ¶ 22. Plaintiff alleges that Defendant breached the Term Sheet by entering into a $100 million financing agreement with a company named Tether International Limited two weeks after it informed Plaintiff that it wished to cease discussions. *Id.* ¶ 4; Dkt. No. 42 at 3.

In this motion, Plaintiff seeks an order compelling Defendant to produce two categories of documents: (1) 16 emails between employees of Defendant and employees of China Renaissance, a third-party broker who was sourcing a financing transaction on Defendant's behalf, in which the China Renaissance employees allegedly expressed concern about the exclusivity provision and the right of participation, *id.* at 1–2; and (2) communications between Defendant and Tether International Limited, *id.* at 3.

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The scope of relevance is broad. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–51 (1978) (defining relevance under Rule 26 to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2d Cir. 1989) ("The broad scope of discovery delimited by the *Federal Rules of Civil Procedure* is designed to achieve disclosure of all the evidence relevant to the merits of a controversy."); *Hoxhaj v. Michael Cetta, Inc.*, 2022 WL 1664963, at *1 (S.D.N.Y. May 25, 2022).

Defendant does not dispute that the emails with the employees of China Renaissance are relevant. It has withheld them on grounds of attorney-client privilege. "[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987) (quoting *In re Grand Jury Subpoena Dtd. January 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984)). "The attorney-client privilege shields from disclosure any confidential communications between an attorney and his or her client made for the purpose of obtaining or facilitating legal

2

advice in the course of a professional relationship." *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 57 N.E.3d 30, 34 (N.Y. 2016). "The party asserting the privilege bears the burden of establishing its entitlement to protection by showing that the communication at issue was between an attorney and a client 'for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship,' that the communication was predominantly of a legal character, that the communication was confidential and that the privilege was not waived." *Id.* at 34–35 (quoting *Rossi v. Blue Cross & Blue Shield of Greater N.Y.*, 540 N.E.2d 703, 706 (N.Y. 1989)). The "communication must be made and kept in confidence." *Berkley Custom Ins. Managers v. York Risk Servs. Grp., Inc.*, 2020 WL 5439636, at *4 (S.D.N.Y. Sept. 10, 2020). "It is well established that voluntary disclosure of confidential material to a third party waives any applicable attorney-client privilege." *Schanfield v. Sojitz Corp. of America*, 258 F.R.D. 211, 214 (S.D.N.Y. 2009); *see Music Sales Corp. v. Morris*, 1999 WL 974025 (S.D.N.Y. Oct. 26, 1999).

Plaintiff argues that the emails with employees of China Renaissance are not privileged because they are not communications between a client and the client's attorney, they were not intended to be kept confidential or in fact kept confidential, and they were not made for the purpose of obtaining or providing legal assistance. Dkt. No. 42 at 2. Defendant responds that "[t]he redacted portions of the email chain consist of correspondence regarding obtaining and conveying the legal advice of [Defendant's] counsel at Cooley LLP regarding [Defendant's] obligations under the Term Sheet, so that CR—as [Defendant's] agent—could act on [Defendant's] behalf." Dkt. No. 45 at 3.

Generally, "a client waives the privilege if a communication is made in confidence but subsequently revealed to a third party." *Ambac Assur. Corp.*, 57 N.E.3d at 34. However, an

3

exception applies "if the third party is an agent of the attorney or client," in which case "disclosure may not result in a waiver." *In re Lifetrade Litig.*, 2022 WL 3644357, at *2 (S.D.N.Y. Aug. 24, 2022); *see United States v. Kovel*, 296 F.2d 918, 921–22 (2d Cir. 1961). For this exception to apply, "the party asserting privilege must demonstrate that when it disclosed the privileged communication to the purported agent, it had both a reasonable expectation that the communication would remain confidential and that the disclosure was needed to obtain legal advice." *Lifetrade Litig.*, 2022 WL 3644357, at *2; *see Ambac Assur. Corp.*, 57 N.E.3d at 35; *Kleeberg v. Eber*, 2019 WL 2085412, at *7 (S.D.N.Y. May 13, 2019). For example, a party who includes an investment bank in a communication with counsel does not waive the privilege when the bank is included "to provide . . . outside counsel with information about certain strategic and transactional matters about which it had expertise so that . . . counsel could give effective legal advice about what could be said publicly about those matters." *Pearlstein v. BlackBerry Ltd.*, 2019 WL 2281280, at *2 (S.D.N.Y. May 29, 2019).

In addition, some courts have suggested that the attorney-client privilege extends to nonemployees of a defendant who are the "functional equivalent of an employee." *Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005); *Church & Dwight Co. Inc. v. SPD Swiss Precision Diagnostics, GmbH*, 2014 WL 7238354, at *3 (S.D.N.Y. Dec. 19, 2014); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 4131650, at *3 (S.D.N.Y. Sept. 9, 2021). The rationale for such extension, which draws on the Supreme Court's decision in *Upjohn Co. v. United States*, is that "too narrow a definition of 'representative of the client' will lead to attorneys not being able to confer confidentially with nonemployees who, due to their relationship to the client, possess the very sort of information that the privilege envisions flowing most freely." *In re Bieter Co.*, 16 F.3d 929, 937–38 (8th Cir. 1994); *see In re Copper*

*Mkt. Antitrust Litig.,* 200 F.R.D. 213, 218 (S.D.N.Y. 2001) (citing *Upjohn*, 449 U.S. 383, 391–92 (1981)). In considering whether a nonemployee is the functional equivalent of an employee, courts in this District have considered "[w]hether the consultant exercised independent decision-making on the company's behalf; possessed information held by no one else at the company; served as a company representative to other third parties; maintained an office at the company or otherwise spent a substantial amount of time working for it; and sought legal advice from corporate counsel to guide his or her work for the company." *Spectrum Dynamics*, 2021 WL 4131650, at *3. The Second Circuit has not explicitly adopted the "functionally equivalent" exception, and most decisions reject the assertion of privilege based on the exception. *See SEC v. Rayat,* 2023 WL 4420325, at *5 (S.D.N.Y. July 10, 2023).

      Defendant has not met their burden of establishing that attorney-client privilege extends to its disclosure of information to China Renaissance. Defendant has not shown that "the disclosure was needed to obtain legal advice." *Lifetrade Litig.*, 2022 WL 3644357, at *2. Defendant has not shown that China Renaissance participated in or facilitated discussions with its lawyers in any way. Rather, the evidence shows that China Renaissance was negotiating a transaction for Defendant, and Defendant recounted the advice of counsel to help China Renaissance handle the transaction. Dkt. No. 42-2. Recounting legal advice to a third party is a paradigmatic example of waiver. This simply is not a situation in which an accountant, financial advisor, or other individual was used to facilitate the attorney's provision of legal advice to a client. *Compare Urb. Box Off. Network, Inc. v. Interfase Managers, L.P.*, 2006 WL 1004472, at *4 (S.D.N.Y. Apr. 18, 2006); *Kovel*, 296 F.2d at 921–22; *Pearlstein*, 2019 WL 2281280, at *2; *Lifetrade Litig.*, 2022 WL 3644357, at *5.

Nor has Defendant shown that China Renaissance was functionally part of Defendant. Defendant only asserts that China Renaissance was its financial advisor and acted as its agent in communicating with certain third parties. Dkt. No. 42 at 3; *see* Dkt. No. 42-5 at 195:21–24. There is no indication China Renaissance lacked independence from Defendant or was otherwise functionally equivalent to an employee. *See Urb. Box Off.*, 2006 WL 1004472, at *4 ("[S]imply because financial consultants are employed to assist a company in a restructuring transaction does not mean that their communications with the company's attorneys are privileged."). "Applying the equivalent function exception to the facts here would swallow the privilege waiver rule and would extend the attorney-client privilege to communications with any third party who was hired to assist the client with something the client could not do on its own." *Church & Dwight Co.*, 2014 WL 7238354, at *3.

By communicating the advice of counsel to China Renaissance, Defendant waived attorney-client privilege. Plaintiff is entitled to Defendant's communications with China Renaissance.

Plaintiff is also entitled to communications with Tether International Limited ("Tether") regarding Defendant's transaction with Tether. Such documents clearly are relevant to whether there was a breach of the Term Sheet as well as to Defendant's understanding of its obligations under the Term Sheet. It is not sufficient that Defendant has produced some documents that go to whether Defendant negotiated with Techer and what Defendant negotiated with Tether. Dkt. No. 45 at 2. Plaintiff is entitled to all documents with respect to those issues that are proportional to the needs of the case. *See* Fed. R Civ. P. 26(b)(1). Plaintiff did not waive its objection to Defendant's response to the Request for Production. It raised the issue with Defendant and with the Court within the time period for fact discovery, which does not close

until April 14, 2025. Dkt. No. 40. *Adstra, LLC v. Kinesso, LLC*, 2024 WL 475361, at *2 (S.D.N.Y. Nov. 12, 2024), upon which Defendant relies, is inapposite. In that case, the moving party waited until long after discovery had ended to raise an objection with respect to the adequacy of a discovery response. Defendant has not shown that it has been prejudiced by Plaintiff's tardy identification of Defendant's deficient response. Defendant states it has been prejudiced because it will be required "to conduct a second document collection and review." Dkt. No. 45 at 2. Defendant has created this burden itself by not producing the documents when they were requested, and it is identical to the burden Defendant would have faced had Plaintiff identified the issue with Defendant's response when that response was first served.

      The motion to compel is GRANTED.

      The Clerk of Court is respectfully directed to close Dkt. No. 42.

      SO ORDERED.

Dated: March 7, 2025
      New York, New York

                                         LEWIS J. LIMAN
                                        United States District Judge