quinn emanuel trial lawyers | new york
295 5th Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7334**

WRITER'S EMAIL ADDRESS
**anilmakhijani@quinnemanuel.com**

June 16, 2025

**<u>VIA ECF</u>**

Hon. Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Ayrton Capital, LLC v. Bitdeer Technologies Group*, Case No. 24 Civ 05160 (LJL)
<u>Defendant's Motion for Protective Order Precluding Deposition of Apex Witness</u>

Dear Judge Liman:

On behalf of Defendant Bitdeer Technologies Group, we write to request a protective order precluding the deposition of Jihan Wu, Bitdeer's Founder, Chairman, and Chief Executive Officer. Mr. Wu is a paradigmatic apex witness and the discovery record establishes that he has no unique personal knowledge of relevant matters. A protective order is therefore appropriate.

## I. <u>Background</u>

Plaintiff Ayrton Capital, LLC and Bitdeer entered into a non-binding Term Sheet on April 29, 2024 regarding a proposed $100-million debt investment by Ayrton in Bitdeer. (ECF No. 1, ¶ 1.) By May 9, 2024, Ayrton indicated that it would be unable to proceed with the deal because it claimed to have identified issues with Bitdeer's collateral. (ECF No. 80, ¶¶ 31-32.) As the parties discussed alternative investment structures through May 2024, Bitdeer informed Ayrton that it anticipated a forthcoming equity investment and, in late May 2024, Bitdeer publicly announced that Tether had made a $100-million equity investment in Bitdeer (the "Tether Deal"). (*Id.*, ¶ 36.) Ayrton congratulated Bitdeer. (ECF No. 84 ("Ayrton's Answer"), ¶ 37.) But later, when Ayrton saw Bitdeer's share price rise, it opportunistically claimed that the Tether Deal was a breach of Ayrton's right of exclusivity, which allegedly entitled Ayrton to a break-up fee of $787,500 and the right to "participate for 25%" in the Tether Deal. (*Id.*, ¶¶ 37-40.)

Since discovery began, Bitdeer, a publicly traded company, has made available two of its corporate officers and one senior employee for deposition: Haris Basit, Bitdeer's Chief Strategy Officer; Jeff LaBerge, Bitdeer's Head of Capital Markets & Strategic Initiatives; and Linghui "Matt" Kong, Bitdeer's Chief Business Officer, who will be testifying in July 2025 in his personal capacity and as Bitdeer's corporate representative regarding the Tether Deal, *see* Ex. 1.

On March 31, 2025, Bitdeer noticed a deposition of Ayrton's principal, Waqas Khatri, having already deposed three other less senior Ayrton personnel between March 21 and March 25. Ayrton's corporate representative testified that Mr. Khatri is the ultimate decisionmaker in all of Ayrton's investments and that Mr. Khatri sometimes approaches limited partners to fund larger transactions, but Ayrton's corporate representative did not know whether Mr. Khatri had done so for an investment in Bitdeer. Ex. 2 at 54:10-56:9, 63:17-66:16, 68:16-22. Bitdeer took a 2.5-hour deposition of Mr. Khatri on June 12, 2025 to explore these and other issues.

Hours after Bitdeer noticed a deposition of Mr. Khatri, Ayrton reflexively noticed a deposition of Mr. Wu. As discussed below, unlike with Mr. Khatri, the discovery record regarding Mr. Wu's personal knowledge and involvement in the subject matter of this Action is minimal.

## II. <u>This Court Should Preclude the Deposition of Mr. Wu</u>

"Under the 'apex witness' doctrine, courts give special scrutiny to requests to depose high-ranking corporate executives." *Frasers Grp. PLC v. Gorman*, 2023 WL 6938284, at *3 (S.D.N.Y. Oct. 19, 2023); *Harapeti v. CBS Television Stations Inc.*, 2021 WL 3932424, at *2 (S.D.N.Y. Sep. 2, 2021) ("Courts must be vigilant so that CEOs . . . are not subjected to the burdens of discovery without a showing that they are likely to have information useful to the litigation that cannot fairly and with less burden be found elsewhere"). "A party seeking such a deposition must show that the corporate executive has 'personal knowledge of relevant facts or some unique knowledge that is relevant to the action.'" *Gorman*, 2023 WL 6938284, at *3 (quoting *In re Ski Train Fire of Nov. 11, 2000*, 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006)). "[R]edundant depositions should be avoided, and senior executives should be deposed only if they possess unique personal knowledge related to the relevant issues in the case." *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, 2008 WL 5099957, at *1 (S.D.N.Y. Dec. 3, 2008); *Shiber v. Centerview Partners LLC*, 2023 WL 3071554, at *3 (S.D.N.Y. Apr. 25, 2023) (Executives "safeguarded" unless they have "unique evidence, personal knowledge of the claims at issue, and other witnesses are incapable of providing testimony about the conduct alleged."); *Harris v. Comput. Assocs. Int'l, Inc.*, 204 F.R.D. 44, 46 (E.D.N.Y. 2001) ("When a vice president can contribute nothing more than a lower level employee, good cause is shown to not take the deposition.").

The discovery record contains no justification for a deposition of Bitdeer's CEO. Of the 1,144 documents Bitdeer produced, Mr. Wu participated in just ***seven*** emails or instant message communications. *See* Exs. 3-9. Six of these documents, Exs. 3-5, 7-9, predate Bitdeer's execution of the Term Sheet and involve Mr. LaBerge and Mr. Basit (who have been deposed) informing Mr. Wu of their negotiations with Ayrton and other lenders, and Mr. Wu doing the same regarding a third-party lender Bitdeer did not engage. The sole post-execution communication in which Mr. Wu participated is dated May 2, 2024—three days after Bitdeer signed the Term Sheet—and is a non-substantive communication that simply involves Mr. Wu thanking Mr. LaBerge for an update on the status of negotiations with Ayrton. *See* Ex. 6.

In addition to these documents, Ayrton has highlighted a message in which Mr. Kong (whom Ayrton will depose) relays to Mr. LaBerge the impressions of Mr. Wu regarding Bitdeer's litigation defenses. Ex. 10. But Ayrton has not contended that Mr. Wu's impressions are based on any first-hand interaction with Ayrton. As Mr. Wu swore in an affidavit, *see* Ex. 11 ¶ 6, he has no first-hand personal knowledge of Bitdeer's dealings with Ayrton. In short, Mr. Wu is "the

prototypical apex witness who sits in the figurative skybox, far removed from the scene of the dispute with no unique knowledge or involvement in the underlying conduct." *Oakley v. MSG Networks, Inc.*, 2024 WL 4859024, at *3 (S.D.N.Y. Nov. 21, 2024) (Sullivan, J.).

Just like Mr. Wu had no unique knowledge or involvement in the negotiation of the Term Sheet, he likewise had no unique knowledge or involvement in the negotiation of the Tether Deal. While Mr. Wu joined Mr. Kong in certain high-level negotiations with Tether's principals, Mr. Kong (and *not* Mr. Wu) worked with Tether personnel and their legal and financial advisors to close the Tether Deal. Ex. 11 ¶ 9. Unlike Mr. Kong, Mr. Wu appeared in no written communications with Tether or its agents. Bitdeer has accordingly designated Mr. Kong as Bitdeer's corporate representative regarding Bitdeer's relationship with Tether and the negotiations that culminated in the Tether Deal. Ex. 1. As there is no "basis for why [Mr. Wu] may have unique knowledge," his deposition ought to be precluded, particularly because "the information sought will be addressed during the 30(b)(6) deposition." *Hallmark Licensing LLC v. Dickens Inc.*, 2018 WL 6573435, at *5 (E.D.N.Y. Dec. 13, 2018); *see also Burns v. Bank of America*, 2007 WL 1589437, at *3 (S.D.N.Y. June 4, 2007) ("Unless it can be demonstrated that a corporate official has some unique knowledge of the issues in the case, it may be appropriate to preclude a deposition of a highly-placed executive while allowing other witnesses with the same knowledge to be questioned." (cleaned up)); *Treppel v. Biovail Corp.*, 2006 WL 468314, at *2 (S.D.N.Y. Feb. 28, 2006) (under apex doctrine, "courts consider the likelihood that the individual possesses relevant knowledge and whether another source could provide identical information.").

In similar circumstances, courts in this Circuit have precluded the depositions of high-ranking corporate officers. For example, in *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, the court precluded a deposition on the basis that the requesting party presented no "basis for suspecting [the witness's] necessarily generalized knowledge of the business of LV is either unique or directly relevant," or shown that other witnesses were "unable to answer questions that DB proposes to ask" the witness. 2006 WL 3476735, at *4 (S.D.N.Y. Nov. 30, 2006). Similarly, in *Tiger Capital, LLC v. PHL Variable Insurance Co.*, the court precluded a deposition of an executive who "was merely advised of the status of assets and opportunities and did not play an active role," and accordingly did not "possess[] unique knowledge of relevant facts not known to witnesses who were deposed or will be deposed." 2013 WL 4517267, at *4-5 (S.D.N.Y. Aug. 26, 2013); *see also Nature's Plus Nordic A/S v. Natural Organics, Inc.*, 2012 WL 1514871, at *2 (E.D.N.Y. Apr. 30, 2012) (similar); *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 2020 WL 13450954, at *6 (E.D.N.Y. Feb. 25, 2020) (precluding deposition where "there were clearly other witnesses who received or wrote these emails and who arguably have the same, or possibly more, information as" the apex witness); *Guan Ming Lin v. Benihana Nat'l Corp.*, 2010 WL 4007282, at *2 (S.D.N.Y. Oct. 5, 2010) (inviting plaintiffs to renew a request to depose executive if "other deponents are unable to provide sufficient detail" regarding relevant issues).

Even if this Court considers that a deposition of Mr. Wu is appropriate, Bitdeer respectfully requests that limitations on the deposition be imposed. The deposition should proceed by written question, *see, e.g.*, *Retail Brand All., Inc. v. Factory Mut. Ins. Co.*, 2008 WL 622810, at *6 (S.D.N.Y. Mar. 7, 2008); *Bouchard v. New York Archdiocese*, 2007 WL 2728666, at *5 (S.D.N.Y. Sep. 19, 2007), or, in the alternative, it should be capped at two hours (inclusive of any time needed for interpretation, as Mr. Wu will testify in Mandarin Chinese), *see, e.g.*, *Louis Vuitton*, 2006 WL 3476735, at *13 (limiting deposition of corporate officer to three hours).

Respectfully submitted,

*/s/ Anil Makhijani*
Anil Makhijani