FRESHFIELDS

New York

3 World Trade Center
175 Greenwich Street
New York, NY 10007

**Gayle Klein**
**T** +1 (212) 277-4000
**T** +1 (212) 230-4645 (direct)
**E** gayle.klein@freshfields.com

**freshfields.us**

Via ECF

June 18, 2025

Hon. Lewis J. Liman
Daniel Patrick Moynihan, U.S. Courthouse
500 Pearl Street
New York, NY 10007

**RE: *Ayrton Capital, LLC v. Bitdeer Technologies Group*, No. 1:24-cv-05160-LJL**

Dear Judge Liman,

We represent Plaintiff Ayrton Capital, LLC ("Ayrton") in the above-captioned case. We write in opposition to Bitdeer Technologies Group's ("Bitdeer") Motion for Protective Order, ECF 88, to preclude the deposition of Bitdeer's Chief Executive Officer, Jihan Wu. Bitdeer's discovery responses, its employees' testimony, the documentary evidence in this case, and the legal position taken by its own counsel less than a month ago in this District all demonstrate that Mr. Wu has intimate personal knowledge warranting deposition. The Court should order Mr. Wu's deposition be taken and allow an additional three and a half hours for translation.

**Bitdeer Admitted that Mr. Wu Has Unique Knowledge About Every Facet of the Case**

Bitdeer and Ayrton negotiated a Term Sheet in Bitdeer's quest for $100 million in financing, which twice identified certain terms as binding. ECF No. 1 ("Compl.") ¶ 2. The binding terms included, *inter alia*: (a) an exclusivity provision during which time Bitdeer could not solicit, negotiate, or accept any proposals with respect to a financing transaction and (b) an agreement that, if it did, Bitdeer would afford Ayrton the right to participate for 25% of that transaction. *Id.* at ¶ 3. Bitdeer breached both provisions. It negotiated with others and ultimately entered into a transaction with Tether (the "Tether Transaction"). Bitdeer nevertheless refused to honor Ayrton's participation right, causing Ayrton damage. *See id.* at ¶ 4, 36. Importantly, Bitdeer itself identified Mr. Wu as having intimate knowledge of every facet of the case, as is further described below. While Mr. Wu may be a CEO, he is plainly not an apex witness.

Given that he executed the Term Sheet underlying this entire dispute, Bitdeer admitted Mr. Wu has discoverable knowledge on day one. Indeed, when Bitdeer served its initial disclosures, it identified Mr. Wu as ***the first*** individual who was likely to have discoverable information. Ex. 1 at 2 (Mr. Wu "[m]ay have information regarding the financing transaction contemplated by the [Term Sheet]"). One month later, Bitdeer served its verified responses to Ayrton's first set of interrogatories, in which it again listed Mr. Wu as ***the first*** Bitdeer employee who has "knowledge of information relevant to the subject matter of the action, specifically the Term Sheet and subsequent negotiations of a financing transaction between Bitdeer and Ayrton." Ex. 2 at 9–10.

Bitdeer then produced documents that confirmed that Mr. Wu has discoverable personal knowledge. The document production demonstrates, by way of example only, that Mr. Wu personally oversaw Bitdeer's financing strategy and outreach during negotiations with Ayrton, commented on the terms of various potential deals, received detailed updates regarding deal progress, and reviewed the issue that Ayrton raised in diligence that caused issues with closing a

FRESHFIELDS



financing transaction (the change of control provision in Bitdeer's Rockdale facility lease). *See e.g.,* Exs. 3–8. And even where Mr. Wu is not the sender or recipient, numerous communications reference directives from Mr. Wu. *See e.g.,* Ex. 9 ("[redacted]"); Ex. 10 ("[redacted]"); Ex. 11 ("[redacted]"); Ex. 3 (Mr. Kong writes that Mr. Wu said to "[redacted]" regarding Ayrton's request to participate).

Ayrton then took the depositions of two Bitdeer employees: Haris Basit, Bitdeer's Chief Strategy Officer, and Jeff LaBerge, its Head of Capital Markets. They testified that [redacted]. *See, e.g.*, Ex. 12 at 46:13–25, 116:25–117:8; Ex. 13 at 93:5–95:20.

If that were not enough to demonstrate Mr. Wu's unique and deep knowledge of the facts underlying this action, Bitdeer put his testimony directly in play when it recently amended its answer to include a fraudulent inducement affirmative defense. ECF No. 80. In support thereof, Bitdeer swore in its Response to Ayrton's Second Set of Interrogatories on May 1, 2025 that Ayrton "employed deceitful tactics to induce Bitdeer ***to sign the Term Sheet***," including making false promises about the ability to "close a financing transaction." Ex. 14 at 9 (emphasis added). Mr. Wu signed the Term Sheet. Ex. 15 at 3. Thus, he is, in fact, the ***only*** Bitdeer employee with knowledge as to what induced Bitdeer to sign the Term Sheet. Ayrton asked Bitdeer's witnesses what induced Mr. Wu to sign the Term Sheet, and they did not know. For example, Mr. Basit testified that [redacted]. Ex. 12 at 97:22–98:8, 98:20–99:14. Mr. Wu has unique knowledge of an affirmative defense that bears deposition inquiry. As Bitdeer's counsel recently argued in obtaining a CEO's deposition over an apex objection, Mr. Wu's "role as the signatory of the []Agreement" is "reason enough" to order the deposition. Ex. 16 at 14 (Mem. of Law in Opp. to Mot. for Protective Order, *GMO Gamecenter USA, Inc. v. Whinstone US, Inc.*, 1:22-cv-5974-JPC-KHP (S.D.N.Y. May 21, 2025, ECF No. 363)).

In sum, this is not a situation where a CEO has not been intimately involved in the facts underlying the claims and defenses in this action. To the contrary, not only did Mr. Wu execute the Term Sheet, Bitdeer itself has admitted at every phase of discovery that Mr. Wu has unique and discoverable information.

**Mr. Wu's Testimony Is Not Protected by the Apex Doctrine**

Barring a party from taking a deposition is an extraordinary form of relief. The party seeking this relief 'bears the burden of proving that the proposed deponent has ***nothing*** to contribute.'" *loanDepot.com, LLC v. CrossCountry Mortg., LLC*, 2024 WL 2154189, at *1 (S.D.N.Y. April 9, 2024) (*quoting Speadmark, Inc. v. Federated Dep't Stores*, 176 F.R.D. 116, 118 (S.D.N.Y. 1997)) (emphasis added). Since "principles relating to apex witnesses are in tension with the broad availability of discovery, it is important to excuse a witness from giving testimony only in compelling circumstances." *Oakley v. MSG Networks, Inc.*, 2024 WL 4134903, at *2 (S.D.N.Y. Sept. 10, 2024). The apex doctrine thus protects senior corporate executives only when they lack

"unique evidence, personal knowledge of the claims at issue, and other witnesses are [capable] of providing testimony about the conduct alleged." *Id.* Indeed, corporate executives are routinely ordered to sit for depositions where they are "intimately involved in directing and deciding key corporate actions." *GMO Gamecenter USA, Inc. v. Whinstone US, Inc.*, 2025 WL 1488512 (S.D.N.Y. May 23, 2025), at *1; *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 2006 WL 3476735, at *13 (S.D.N.Y. Nov. 30, 2006) (executives who have "concededly participated directly in a pertinent event . . . [are] appropriately subject to questioning about [their] participation.")

As Bitdeer's lead counsel argued in *GMO Gamecenter* on May 21, 2025, "[t]here is a reason that the apex doctrine does not automatically apply to each and every CEO, and that is because while some CEOs run their companies from a position far removed from the operations on the ground, others take a much more hands-on approach." Ex. 16. Like the CEO in *GMO Gamcecenter*, Mr. Wu is a "CEO who took a deep interest in the subject matter of this lawsuit; molding, directing, and influencing the very facts at its core." *Id.* Although Bitdeer argues in its Motion for Protective Order that Mr. Wu has no unique knowledge relevant to this Action, this is false. As is demonstrated above, Mr. Wu took a deep interest in the subject matter of the lawsuit. He directed the financing strategy, made the decision to sign the Term Sheet, signed the Term Sheet, made the decision to breach the Term Sheet and participated in the activities breaching the Term Sheet. This is not even a close call.

Bitdeer seeks to obfuscate Mr. Wu's deep involvement by alleging that he was on minimal email communications, did not directly communicate with Ayrton, his knowledge of negotiations either came from others or that others were involved. *See* ECF No. 89-11 at ¶¶ 4–10. But as described above, as the architect and signatory of the transactions at issue (a fact omitted by Bitdeer in its letter), the instigator of the breach of the exclusivity provision, and the decisionmaker to deny Ayrton's participation right, Mr. Wu is plainly subject to deposition. Indeed, Ayrton is entitled to probe the discussions Mr. Wu admits he had with colleagues regarding same. *See, e.g.*, *id.* at ¶ 6.

Finally, Bitdeer's insistence that Mr. Wu is an apex witness and request that any deposition be limited to two hours including Mandarin-English translation is incredibly troubling. Given that Bitdeer's counsel recently took Ayrton's position on similar facts in *GMO Gamecenter*, Ayrton has a good faith concern that Mr. Wu is the driving force of the motion and may engage in stalling tactics with the translator to "run out the clock" on his deposition. Moreover, Mr. Wu is a Chinese billionaire who resides in Singapore and is unlikely to appear at trial. https://en.wikipedia.org/wiki/Jihan_Wu. Ayrton is concerned that, after it uses any limited time to examine Mr. Wu, Bitdeer will engage in direct examination and seek to use the time limitation to preclude Ayrton from further cross. Moreover, Mandarin-English translation takes considerable time. Accordingly, Ayrton respectfully requests an additional three and a half hours beyond the usual seven hours of testimony to account for translation services. *See, e.g.*, *Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 402, 407 (S.D.N.Y. 2018) (allowing additional 3.5 hours of deposition based on "additional time it takes for translation during depositions"); Fed. R. Civ. P. 30, Advisory Comm. Notes to 2000 Am. ("if the witness needs an interpreter, that may prolong the examination"). The amount of time Bitdeer used to depose Ayrton's CEO is irrelevant; Mr. Wu has personal knowledge of more topics than does Mr. Khatri. Ayrton represents that it will make good faith efforts to be efficient with its questioning and shall endeavor to conclude its questioning before the time allotted.

FRESHFIELDS



Sincerely,

*/s/ Gayle Klein*

Gayle Klein