# EXHIBIT 14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AYRTON CAPITAL, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>BITDEER TECHNOLOGIES GROUP,<br><br>*Defendant*. | Case No. 24-5160 |

**DEFENDANT BITDEER TECHNOLOGIES GROUP'S RESPONSES AND OBJECTIONS TO PLAINTIFF AYRTON CAPITAL, LLC'S SECOND SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of New York, Defendant Bitdeer Technologies Group ("Bitdeer") hereby responds and objects to the Second Set of Interrogatories (the "Interrogatories" or, individually, each an "Interrogatory") served by Plaintiff Ayrton Capital, LLC ("Ayrton") in the above-captioned action ("Action"), without waiving any claims that Bitdeer has or hereafter may assert in the Action.

## GENERAL OBJECTIONS

The following general objections (together with the objections to the Definitions and Instructions below, the "General Objections") apply to each of the Interrogatories and are incorporated by reference into each Response as if expressly set forth therein. The assertion of the same, similar, or additional objections in the specific response to each Interrogatory (the "Specific Objections") does not waive any of the General Objections.

1. Bitdeer objects to each and every Interrogatory on the ground and to the extent they are premature, as discovery has not concluded in this Action. Bitdeer accordingly reserves the right to supplement each of the Responses contained herein.

2. Bitdeer objects to each and every Interrogatory on the ground and to the extent it requires Bitdeer to provide information beyond what can be obtained by a reasonably diligent investigation.

3. Bitdeer objects to each and every Interrogatory on the ground and to the extent it seeks information outside of Bitdeer's possession, custody, or control.

4. Bitdeer objects to each and every Interrogatory to the extent it assumes disputed facts or states legal conclusions. These Responses are not intended to be, nor should they be construed as, an admission by Bitdeer of any such disputed facts or legal conclusions.

5. Bitdeer objects to each and every Interrogatory on the ground and to the extent it seeks information that is publicly available, is already in Ayrton's possession or has been provided to Ayrton, or to which Ayrton has equal or greater access. To the extent Bitdeer identifies any such documents in response to the Interrogatories based on its reasonable search, Bitdeer does so only for emphasis and without excluding from its Response any and all other responsive documents already in Ayrton's possession.

6. Bitdeer objects to each and every Interrogatory on the ground and to the extent it seeks information that is the subject of expert discovery, and will be disclosed as part of expert discovery. Bitdeer reserves the right to rely on information that may be disclosed as part of expert discovery, and Bitdeer's Responses should not be interpreted as limiting Bitdeer's reliance on arguments or evidence that may be disclosed as part of expert discovery.

7. Bitdeer's Responses are given without prejudice to its right to produce or rely on subsequently discovered information, facts, or documents. Bitdeer accordingly reserves the right to produce or rely on subsequently discovered documents as additional facts are ascertained. Bitdeer's discovery and investigation in this matter are ongoing, and Bitdeer reserves the right to supplement or amend its responses pursuant to Federal Rule 26(e) with additional information as its investigations continue. Bitdeer's responses should not be interpreted as limiting, in any way, Bitdeer's trial presentation, the evidence Bitdeer may seek to admit, or any argument or evidence that Bitdeer may rely on in connection with any motion.

## OBJECTIONS TO DEFINITIONS

1. Bitdeer objects to the definitions of "Communication(s)" and "Communicating" as overbroad and unduly burdensome, including to the extent they refer to "handwritten notes . . . texts, instant messages (including, without limitation, Slack, WhatsApp, and similar platforms), voicemail, transcripts, recordings, and so on."

2. Bitdeer objects to the definition of "Document(s)" to the extent that it purports to impose obligations greater than those set forth in the Federal Rules of Civil Procedure.

3. Bitdeer objects to the definition of "Financing" as overbroad, unduly burdensome, vague, and ambiguous, particularly to the extent it includes "any transaction involving notes, loan arrangements, or raising capital, debt, or money." Bitdeer defines "Financing" as referring to transactions involving the sale of debt instruments.

4. Bitdeer objects to the definition of "Information" as overbroad, unduly burdensome, vague, and ambiguous, particularly to the extent it includes "databases provided by external vendors."

5. Bitdeer objects to the definitions of "Regarding," "Relating to," and "Related to" as overbroad, unduly burdensome, vague, and ambiguous. Bitdeer interprets these words in accordance with the definition of "Concerning" in Local Civil Rule 26.3(c)(7).

6. Bitdeer objects to the definition of "Tether" as overbroad, unduly burdensome, vague, and ambiguous, particularly to the extent it includes "any parents, subsidiaries, affiliates, employees, agents, representatives, officials, appointees, consultants, or any other Person acting o[r] purporting to act on behalf of Tether International Limited." Bitdeer defines "Tether" to refer to Tether International Limited and its known employees, officers, and directors.

7. Bitdeer objects to the definition of "You" and "Your" as overbroad, unduly burdensome, vague, and ambiguous, particularly to the extent it includes "any parents, subsidiaries, affiliates, employees, agents, representatives, officials, appointees, consultants, or any other Person acting or purporting to act on behalf of Bitdeer Technologies Group." Bitdeer defines "You" and "Your" to refer to Bitdeer Technologies Group and its employees, officers, and directors.

## OBJECTIONS TO INSTRUCTIONS

1. Bitdeer objects to Instruction No. 2 as overbroad, unduly burdensome, vague, and ambiguous, particularly to the extent it purports to require Bitdeer to answer the Interrogatories based on information in the possession, custody, or control of "YOUR subsidiaries, divisions, predecessors, successors, affiliates, employees, agents, representatives, appointees, or attorneys."

2. Bitdeer objects to Instruction No. 5 to the extent it requires Bitdeer to rewrite Ayrton's Interrogatories. Bitdeer agrees to meet and confer regarding any Interrogatories that Bitdeer considers to be vague.

3. Bitdeer objects to Instruction No. 6 as unduly burdensome, particularly to the extent it purports to impose requirements greater than those stated in Local Civil Rule 26.2. Bitdeer will reasonably particularize its privilege objection(s), if any, and otherwise refers Ayrton to its First Amended Categorical Privilege Log dated March 14, 2025.

**RESPONSES TO INTERROGATORIES**

**Interrogatory No. 5**

State all facts supporting YOUR contention that AYRTON's claim is barred in whole or in part because the Confidentiality and Exclusivity provision of the TERM SHEET is an unenforceable penalty, as asserted in YOUR first AFFIRMATIVE DEFENSE.

**Response to Interrogatory No. 5**

Bitdeer incorporates its General Objections as if fully set forth herein. Bitdeer further objects to this Interrogatory to the extent it is overbroad and unduly burdensome insofar as it seeks "*all* facts." Bitdeer further objects to this Interrogatory on the ground and to the extent that it seeks information that is already in Ayrton's possession, custody, and/or control. Bitdeer further objects to this Interrogatory on the ground and to the extent that it calls for expert evidence in advance of the parties' agreed-upon deadlines for expert discovery.

Subject to, as limited by, and without waiving the foregoing General and Specific Objections, Bitdeer states that Ayrton's claim is barred in whole or in part because the Term Sheet constitutes an unenforceable penalty.

*First*, Ayrton has suffered no damages as a result of any alleged breach by Bitdeer of the Confidentiality & Exclusivity Provision (the "Provision"). As Ayrton has conceded, it incurred no out-of-pocket costs for which it was not compensated, including because it never retained a due diligence vendor and its legal fees fell far short of the $125,000 that Bitdeer remitted to Ayrton—

meaning that Ayrton in fact made a profit off its negotiations with Bitdeer. In the absence of any injury to Ayrton from Bitdeer's alleged breach, the damages Ayrton seeks in reliance on the Provision amount to an unenforceable penalty.

*Second*, the penalties mandated by the Provision greatly exceed even Ayrton's greatest annual profits. In the ordinary course, Ayrton's total management fees when its fund has a "strong year" do not even exceed $20 million across Ayrton's full portfolio, demonstrating the extent to which the penalties mandated by the Provision procure a windfall for Ayrton. The extent of this windfall establishes the disproportionality of the penalty.

*Third*, the Provision's "right to participate" penalty is non-standard in the industry, and it is also non-standard for Ayrton. The "right to participate" penalty is not reflected in Ayrton's template term sheet. Of the 12 term sheets Ayrton produced to Bitdeer, 11 confer upon Ayrton a right to participate in a competing "financing transaction," while the Term Sheet permits Ayrton to participate in "any third party transaction." The only term sheet that contains similar language ("any third party transaction") is accompanied by the words "on terms substantially similar to the terms in this transaction"—language that is missing from the Term Sheet but that would meaningfully limit the scope of the participation right contained therein. Notably, that term sheet was executed three weeks after Bitdeer filed its counterclaim. And quite apart from distancing itself from an expansive (and unenforceable) interpretation of the "right to participate" penalty, Ayrton has embraced the full extent of the language in all of its absurdity, beginning with Ayrton's Complaint.

*Fourth*, the Provision mandates penalties that are harmful to Bitdeer. The payment of a break-up fee is plainly damaging to Bitdeer. Ayrton's suggestion that the "right to participate" is not similarly harmful because it results in an investment by Ayrton in Bitdeer is contradicted by

the record. Many financing institutions do not want to entertain tripartite financing agreements, which would permit a financing institution's competitors to participate in deals that the financing institution negotiated for itself, such that third-party participation can scuttle a transaction. As Ayrton is a relatively small lender with a checkered history, there is a real risk that Ayrton's involvement would cause deals with more reputable lenders to fall through.

*Fifth*, the Provision permits double- or triple-recovery, as Ayrton has expressly embraced an interpretation of the Term Sheet that permits it to collect not just the Provision's penalties, but also money damages, attorney's fees, and other remedies available at law. Whereas drafts of the Term Sheet referred to the break-up fee as Ayrton's "sole remedy" for Bitdeer's breach, Ayrton struck those words from the Term Sheet, expressly intending, as its corporate representative testified, to permit Ayrton to recover many multiples of the damages it could otherwise obtain, absent the penalty.

*Sixth*, even if the Provision were limited to the break-up fee, it would still constitute an unenforceable penalty. As Ayrton's corporate representative admitted, the break-up fee does not have "any direct correlation to any damages that have been suffered."

The provision is therefore an unenforceable penalty.

In support of its Response, Bitdeer relies upon documents including but not limited to: AYRTON_0000001, AYRTON_0000006, AYRTON_0000010, AYRTON_0000016, AYRTON_0000019, AYRTON_0000022, AYRTON_0000026, AYRTON_0000032, AYRTON_0000038, AYRTON_0000047, AYRTON_0000050, AYRTON_0000056, AYRTON_0000059, AYRTON_0000062, AYRTON_0000075, AYRTON_0000862, AYRTON_0000866, AYRTON_0000972, AYRTON_0001061, AYRTON_0001142, AYRTON_0001181, AYRTON_0001182, AYRTON_0001197, AYRTON_0001213,

AYRTON_0001229, AYRTON_0001264, AYRTON_0001270, AYRTON_0001277, AYRTON_0001280, AYRTON_0001284, AYRTON_0001287, AYRTON_0001363, AYRTON_0001365, AYRTON_0008181, AYRTON_0008200, AYRTON_0008256, AYRTON_0008260, AYRTON_0008283, AYRTON_0008291, AYRTON_0008295, AYRTON_0008300, BIT0000201, BIT0000816, BIT0002696, Ayrton's Complaint dated July 8, 2024 (ECF No. 1), and Ayrton's Responses and Objections to Bitdeer's First Set of Requests for Admission dated March 7, 2025.

Bitdeer also relies upon the depositions of witnesses including but not limited to: Jarryd Gross (at pp. 93, 155-57, 237-41, 253, 255-56).

Bitdeer reserves the right to amend or supplement this Response.

**Interrogatory No. 6**

State all facts supporting YOUR contention that AYRTON's claim is barred in whole or in part by the doctrine of unconscionability, as asserted in YOUR second AFFIRMATIVE DEFENSE.

**Response to Interrogatory No. 6**

Bitdeer incorporates its General Objections as if fully set forth herein. Bitdeer further objects to this Interrogatory to the extent it is overbroad and unduly burdensome insofar as it seeks "*all* facts." Bitdeer further objects to this Interrogatory on the ground and to the extent that it seeks information that is already in Ayrton's possession, custody, and/or control.

Subject to, as limited by, and without waiving the foregoing General and Specific Objections, Bitdeer states that Ayrton's claim is barred in whole or in part by the doctrine of unconscionability because the process of negotiating the Term Sheet was procedurally and

substantively unfair to Bitdeer. Bitdeer incorporates by reference its Responses to all other Interrogatories, including in particular its Response to Interrogatory No. 5.

Ayrton employed deceitful tactics to induce Bitdeer to sign the Term Sheet. For example, Ayrton made revisions to drafts of the Term Sheet without calling Bitdeer's attention to those revisions, and while representing to Bitdeer that it could make no further revisions to the Term Sheet absent investment committee approval. Similarly, Ayrton represented to Bitdeer that it had completed sufficient due diligence based on publicly available information about Bitdeer to be able to close a financing transaction with Bitdeer within "2-3 weeks." These representations were deceitful because Ayrton had neither the ability nor the intention to close a transaction with Bitdeer on the promised timeframe. For one, Ayrton either misrepresented that it had reviewed publicly available information regarding Bitdeer's collateral, or it misrepresented the result of its review—in either case inducing Bitdeer to believe the collateral would be adequate only for Ayrton to later take the position that the collateral was inadequate. Similarly, Ayrton lacked the ability to close the transaction contemplated by the Term Sheet, both because it did not have the necessary capital and had taken no steps to secure such capital.

The bargain reflected in the Term Sheet is also substantively unfair. Ayrton has admitted not just that it owes Bitdeer no obligations under the Term Sheet, but that it expressly intended for the Term Sheet not to bind Ayrton to any obligations whatsoever. Even if Ayrton were required to negotiate the contemplated financing transaction, all of its costs in doing so are covered by Bitdeer, and are non-refundable. Moreover, the Term Sheet requires written agreement of the parties to terminate negotiations, such that Ayrton has power to extend the exclusivity period indefinitely. In fact, Ayrton has never agreed in writing to terminate negotiations, and did not respond to Bitdeer's May 13, 2024 email. In consideration of *precisely nothing*, Ayrton claims a

sweeping right to interfere with all of Bitdeer's third-party transactions for six months from a date that it may prevent from ever occurring. Ayrton has subsequently valued the deprivation of that right in the context of Bitdeer's May 2024 transaction with Tether at more than $32 million—when, in a "strong year," Ayrton's total management fees are just $20 million.

Ayrton's claim that confidentiality & exclusivity provisions are commonplace in the industry is belied by the record, given that the very Provision at issue here is not even standard practice for Ayrton itself. Unlike the Provision here, the 12 term sheets Ayrton produced all contain materially different provisions. Eleven out of the 12 term sheets provide that the confidentiality & exclusivity provision therein will apply to a "Competing Transaction" only, while the Provision here says that Ayrton will be able to invoke a right to participate in *any* third-party transaction executed by Bitdeer. Even Ayrton's template term sheet does not contain similar language. And as proof of the unfairness of the Provision here, a term sheet that Ayrton executed on November 5, 2024, just weeks after Bitdeer filed its counterclaim, contains modifications that significantly limit its unfairness. The public record, including available case law, is likewise devoid of examples of other term sheets containing similar "right to participate" provisions.

In support of its Response, Bitdeer relies upon documents including but not limited to: AYRTON_0000001, AYRTON_0000006, AYRTON_0000010, AYRTON_0000016, AYRTON_0000019, AYRTON_0000022, AYRTON_0000026, AYRTON_0000030, AYRTON_0000032, AYRTON_0000038, AYRTON_0000041, AYRTON_0000047, AYRTON_0000075, AYRTON_0000861, AYRTON_0000862, AYRTON_0001052, AYRTON_0001061, AYRTON_0003363, BIT0000451, BIT0001723, BIT0001736, BIT0001752, BIT0001764, BIT0001767, BIT0001779, BIT0002009, BIT0002016, BIT0002078, and BIT0002081.

Bitdeer also relies upon the depositions of witnesses including but not limited to: Jarryd Gross (at pp. 52-54, 62-64, 155-57, 204-07, 340-42).

Bitdeer reserves the right to amend or supplement this Response.

**Interrogatory No. 7**

State all facts supporting YOUR contention that AYRTON's claim is barred in whole or in part by the equitable doctrine of unclean hands or bad faith, as asserted in YOUR fourth AFFIRMATIVE DEFENSE.

**Response to Interrogatory No. 7**

Bitdeer incorporates its General Objections as if fully set forth herein. Bitdeer further objects to this Interrogatory to the extent that it is overbroad and unduly burdensome insofar as it seeks "*all* facts." Bitdeer further objects to this Interrogatory on the ground and to the extent that it seeks information that is already in Ayrton's possession, custody, and/or control.

Subject to, as limited by, and without waiving the foregoing General and Specific Objections, Bitdeer states that Ayrton's claim is barred in whole or in part by the equitable doctrine of unclean hands or bad faith. Bitdeer incorporates by reference its Responses to all other Interrogatories, including in particular its Responses to Interrogatories No. 5 and 6.

Ayrton employed bad-faith, deceptive tactics throughout its dealings with Bitdeer. Ayrton misled Bitdeer as to its intention, willingness, and ability to close a $100-million financing transaction. Ayrton also made revisions to drafts of the Term Sheet without calling Bitdeer's attention to those revisions, and while representing to Bitdeer that it could make no further revisions to the Term Sheet absent investment committee approval, even though those revisions materially altered the scope of the parties' agreement as reflected in the Term Sheet. Moreover, Ayrton lulled Bitdeer into believing that the Tether Transaction did not violate the

Provision. Rather than assert a breach at the earliest opportunity, Ayrton instead congratulated Bitdeer on the Tether Transaction. Rather than voice an interest in "participating" in the Tether Transaction at the earliest opportunity, Ayrton waited for that deal to close and closely tracked Bitdeer's stock performance before retroactively demanding a right to participate. Ayrton personnel gleefully tracked Bitdeer's stock price and viewed this lawsuit as a means to remedy Ayrton's lackluster financial performance in 2024, in exchange for nothing.

Appreciating that Bitdeer hoped to close a $100-million debt transaction on a short timeframe, Ayrton knowingly signed a Term Sheet for a transaction it had no intention of ever executing. After Ayrton claimed to be unable to close the transaction contemplated by the Term Sheet, Ayrton quickly proposed an alternative convertible note transaction to Bitdeer—a transaction that Ayrton preferred all along but that Bitdeer previously rejected.

In support of its Response, Bitdeer relies upon documents including but not limited to: AYRTON_0001647, AYRTON_0001648, AYRTON_0001817, AYRTON_0001818, AYRTON_0001819, AYRTON_0001820, AYRTON_0001821, AYRTON_0001822, AYRTON_0002116, AYRTON_0002259, AYRTON_0002261, AYRTON_0002547, AYRTON_0007921, AYRTON_0007927, AYRTON_0007928, AYRTON_0007929, AYRTON_0007930, AYRTON_0007947, AYRTON_0007958, AYRTON_0007964, AYRTON_0007968, AYRTON_0007979, AYRTON_0007983, AYRTON_0007984, AYRTON_0007985, AYRTON_0007999, AYRTON_0008012, AYRTON_0008017, AYRTON_0008020, AYRTON_0008021, AYRTON_0008022, AYRTON_0008023, AYRTON_0008036, AYRTON_0008040, AYRTON_0008047, AYRTON_0008052, AYRTON_0008053, AYRTON_0008054, AYRTON_0008055, AYRTON_0008056,

AYRTON_0008057, AYRTON_0008058, AYRTON_0008059, AYRTON_0008170, and Ayrton's Answer to Bitdeer's Counterclaim dated November 6, 2024 (ECF No. 26).

Bitdeer also relies upon the depositions of witnesses including but not limited to: Jarryd Gross (at pp. 100-03), Jeff LaBerge (at pp. 255-57).

Bitdeer reserves the right to amend or supplement this Response.

**Interrogatory No. 8**

State all facts supporting YOUR contention that AYRTON's claim is barred in whole or in part due to the failure of a condition precedent, as asserted in YOUR sixth AFFIRMATIVE DEFENSE.

**Response to Interrogatory No. 8**

Bitdeer incorporates its General Objections as if fully set forth herein. Bitdeer further objects to this Interrogatory to the extent that it is overbroad and unduly burdensome insofar as it seeks "*all* facts." Bitdeer further objects to this Interrogatory on the ground and to the extent that it seeks information that is already in Ayrton's possession, custody, and/or control.

Subject to, as limited by, and without waiving the foregoing General and Specific Objections, Bitdeer states that Ayrton's claim is barred in whole or in part by the failure of a condition precedent because Ayrton's recovery of the break-up fee and the right to participate are conditioned on (i) Ayrton having itself performed under the Term Sheet, (ii) Bitdeer having breached the obligations contained in the Confidentiality & Exclusivity Provision, and (iii) Ayrton having invoked in a timely manner a right to participate in the May 2024 transaction with Tether. Because none of these conditions is satisfied, Ayrton's claim is barred in whole or in part.

As to the first condition, if the Term Sheet imposes any obligations on Ayrton at all, Ayrton breached those obligations because it did not negotiate with Bitdeer in good faith. Having lured

Bitdeer into the Term Sheet based on false representations, as detailed in Bitdeer's Response to Interrogatory No. 7, Ayrton had no intention or ability to ever execute on the transaction contemplated by the Term Sheet. Its negotiations with Bitdeer were thus in bad faith, as Ayrton intended both to trap Bitdeer in an onerous exclusivity obligation and force it to negotiate the convertible note transaction that Ayrton preferred all along, which Bitdeer had previously rejected.

As to the second condition, Bitdeer's negotiation of the May 2024 transaction with Tether does not constitute a breach of the Term Sheet. That transaction is a pure equity transaction bearing no resemblance to the debt transaction contemplated by the Term Sheet. Moreover, even if the transaction with Tether amounts to a breach of the Term Sheet, Ayrton cannot rely on that breach, given that it took several weeks to assert the breach, waiting in bad faith to observe Bitdeer's stock performance before trying to cash in on a deal that had already closed and in which Ayrton played no part.

As to the third condition, Ayrton had full knowledge of the May 2024 transaction with Tether over one week before that transaction closed, the full terms of which were disclosed publicly on May 31, 2024. Rather than request to participate in the transaction before it closed on May 30, Ayrton waived that right by never once suggesting that Bitdeer had breached the Term Sheet, that Ayrton had a right to participate in the transaction, or that in fact wanted to do so. Ayrton preferred instead to wait and see how Bitdeer's stock price would perform before demanding a right to participate retroactively.

In support of its Response, Bitdeer relies upon documents including but not limited to: AYRTON_0001817, AYRTON_0001818, AYRTON_0001819, AYRTON_0001820, AYRTON_0001821, AYRTON_0001822, AYRTON_0002116, AYRTON_0002259, AYRTON_0002261, AYRTON_0002547, AYRTON_0007921, AYRTON_0007930,

AYRTON_0007947, AYRTON_0007958, AYRTON_0007964, AYRTON_0007968, AYRTON_0007979, AYRTON_0007999, AYRTON_0008012, AYRTON_0008017, AYRTON_0008036, AYRTON_0008040, AYRTON_0008047, AYRTON_0008170, and Ayrton's Answer to Bitdeer's Counterclaim dated November 6, 2024 (ECF No. 26).

Bitdeer also relies upon the depositions of witnesses including but not limited to: Haris Basit (at pp. 142-46) and Jarryd Gross (at pp. 100-02, 117).

Bitdeer reserves the right to amend or supplement this Response.

**Interrogatory No. 9**

State all facts supporting YOUR contention that AYRTON's claim is barred in whole or in part by its comparative fault, as asserted in YOUR eighth AFFIRMATIVE DEFENSE.

**Response to Interrogatory No. 9**

Bitdeer incorporates its General Objections as if fully set forth herein. Bitdeer further objects to this Interrogatory to the extent that it is overbroad and unduly burdensome insofar as it seeks "*all* facts." Bitdeer further objects to this Interrogatory on the ground and to the extent that it seeks information that is already in Ayrton's possession, custody, and/or control.

Subject to, as limited by, and without waiving the foregoing General and Specific Objections, Bitdeer incorporates by reference and relies upon its response to Interrogatory No. 8. Because Ayrton failed to negotiate in good faith with Bitdeer, its claim is barred in whole or in part. Furthermore, rather than assert its "right to participate" in the Tether Transaction at the earliest opportunity, Ayrton preferred instead to wait and see how Bitdeer's stock price changed after the Transaction was announced, running up its losses.

Bitdeer reserves the right to amend or supplement this Response.

**Interrogatory No. 10**

State all facts supporting YOUR contention that AYRTON's claim is barred in whole or in part based on impossibility of performance, as asserted in YOUR tenth AFFIRMATIVE DEFENSE.

**Response to Interrogatory No. 10**

Bitdeer incorporates its General Objections as if fully set forth herein. Bitdeer further objects to this Interrogatory to the extent that it is overbroad and unduly burdensome insofar as it seeks "*all* facts." Bitdeer further objects to this Interrogatory on the ground and to the extent that it seeks information that is already in Ayrton's possession, custody, and/or control.

Subject to, as limited by, and without waiving the foregoing General and Specific Objections, Bitdeer incorporates by reference and relies upon its response to Interrogatory No. 8. Through Ayrton's unwillingness and inability to effectuate the $100-million transaction contemplated by the Term Sheet, the parties' performance thereunder became impossible. Similarly, through Ayrton's waiver of the right to participate in the transaction with Tether, Ayrton's participation in that transaction became impossible.

Bitdeer reserves the right to amend or supplement this Response.

**Interrogatory No. 11**

State all facts supporting YOUR contention that "Bitdeer advised Ayrton as the negotiations with Tether unfolded," as alleged in ¶ 37 of YOUR COUNTERCLAIM.

**Response to Interrogatory No. 11**

Bitdeer incorporates its General Objections as if fully set forth herein. Bitdeer further objects to this Interrogatory to the extent that it is overbroad and unduly burdensome insofar as it

seeks "*all* facts." Bitdeer further objects to this Interrogatory on the ground and to the extent that it seeks information that is already in Ayrton's possession, custody, and/or control.

Subject to, as limited by, and without waiving the foregoing General and Specific Objections, Bitdeer states that Bitdeer spoke to Ayrton repeatedly to provide updates as the Tether Transaction was being negotiated. In fact, Ayrton has admitted that it was advised of the Tether Transaction, and Ayrton admits that it congratulated Bitdeer on the Tether Transaction.

In support of its Response, Bitdeer relies upon documents including but not limited to: AYRTON_0001690, AYRTON_0002094, AYRTON_0002112, AYRTON_0003057, AYRTON_0003062, AYRTON_0008170, and Ayrton's Responses and Objections to Bitdeer's First Set of Requests for Admission dated March 7, 2025.

Bitdeer also relies upon the depositions of witnesses including but not limited to: Haris Basit (at pp. 166, 177-81), Jarryd Gross (at pp. 100-06), and Jeff LaBerge (at pp. 252-73).

Bitdeer reserves the right to amend or supplement this Response.

**Interrogatory No. 12**

State all facts supporting YOUR contention in YOUR JUNE 19, 2024 EMAIL that "the Company already provided" AYRTON with the opportunity to participate in the TETHER TRANSACTION.

**Response to Interrogatory No. 12**

Bitdeer incorporates its General Objections as if fully set forth herein. Bitdeer further objects to this Interrogatory to the extent that it is overbroad and unduly burdensome insofar as it seeks "*all* facts." Bitdeer further objects to this Interrogatory on the ground and to the extent that it seeks information that is already in Ayrton's possession, custody, and/or control.

Subject to, as limited by, and without waiving the foregoing General and Specific Objections, Bitdeer states that if the Tether Transaction constitutes a breach of the Term Sheet, then Ayrton was given the right to participate in that Transaction from the moment it learned of it on May 22, 2024. Ayrton declined to act on that right, instead preferring to wait and see how Bitdeer's stock performed in the public markets in a bid to inflate its damages.

In support of its Response, Bitdeer relies upon documents including but not limited to: AYRTON_0001690, AYRTON_0002094, AYRTON_0002112, AYRTON_0003057, AYRTON_0003062, AYRTON_0008170, Ayrton's Answer to Bitdeer's Counterclaim dated November 6, 2024 (ECF No. 26), and Ayrton's Responses and Objections to Bitdeer's First Set of Requests for Admission dated March 7, 2025.

Bitdeer also relies upon the depositions of witnesses including but not limited to: Haris Basit (at pp. 166, 177-81), Jarryd Gross (at pp. 100-06), and Jeff LaBerge (at pp. 252-73).

Bitdeer reserves the right to amend or supplement this Response.

**Interrogatory No. 13**

State all facts supporting YOUR contention in YOUR JUNE 19, 2024 EMAIL that AYRTON "expressly declined to participate in the TETHER TRANSACTION. [*sic*]

**Response to Interrogatory No. 13**

Bitdeer incorporates its General Objections as if fully set forth herein. Bitdeer further objects to this Interrogatory to the extent that it is overbroad and unduly burdensome insofar as it seeks "*all* facts." Bitdeer further objects to this Interrogatory on the ground and to the extent that it seeks information that is already in Ayrton's possession, custody, and/or control.

Subject to, as limited by, and without waiving the foregoing General and Specific Objections, Bitdeer states that if the Tether Transaction constitutes a breach of the Term Sheet,

then Ayrton was given the right to participate in that Transaction from the moment it learned of it on May 22, 2024. Ayrton declined to act on that right, instead preferring to wait and see how Bitdeer's stock performed in the public markets in a bid to inflate its damages.

In support of its Response, Bitdeer relies upon documents including but not limited to: AYRTON_0001690, AYRTON_0002094, AYRTON_0002112, AYRTON_0003057, AYRTON_0003062, AYRTON_0008170, Ayrton's Answer to Bitdeer's Counterclaim dated November 6, 2024 (ECF No. 26), and Ayrton's Responses and Objections to Bitdeer's First Set of Requests for Admission dated March 7, 2025.

Bitdeer also relies upon the depositions of witnesses including but not limited to: Haris Basit (at pp. 166, 177-81), Jarryd Gross (at pp. 100-06), and Jeff LaBerge (at pp. 252-73).

Bitdeer reserves the right to amend or supplement this Response.

DATED: May 1, 2025

/s/ *Renita Sharma*
Michael B. Carlinsky
Renita Sharma
Daniel Sisgoreo
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10016
Phone: (212) 849-7000
michaelcarlinsky@quinnemanuel.com
renitasharma@quinnemanuel.com
danielsisgoreo@quinnemanuel.com

*Attorneys for Defendant Bitdeer Technologies Group*

# VERIFICATION

I, Haris Basit, am an authorized representative of Bitdeer Technologies Group. I make this verification pursuant to Fed. R. Civ. P. 33(b)(5). I have reviewed the foregoing Defendant Bitdeer Technologies Group's Responses and Objections to Plaintiff Ayrton Capital, LLC's Second Set of Interrogatories ("the Responses"), which were prepared with the assistance of counsel. Based on my review, I believe, based on reasonable inquiry, that the foregoing Responses are true and correct to the best of my knowledge, information, and belief. I reserve the right to make changes in or additions to, or otherwise provide supplemental responses to, any of these Responses.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Executed this 1st day of May, 2025.

DATED: May 1, 2025

Haris Basit