**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AYRTON CAPITAL, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>BITDEER TECHNOLOGIES GROUP,<br><br>*Defendant*. | Case No. 24-cv-05160 (LJL) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT BITDEER TECHNOLOGIES GROUP'S MOTION FOR SUMMARY JUDGMENT**

## PRELIMINARY STATEMENT

In its third brief on the subject of whether the Term Sheet between Bitdeer Technologies Group and Ayrton Capital, LLC is supported by consideration, Ayrton still cannot describe any consideration it was obligated to give to Bitdeer under the Term Sheet. Instead, Ayrton urges the Court to give effect to the parties' intent that the Term Sheet be "binding." But the plain language of the Term Sheet and all parol evidence discloses that the parties intended for the Term Sheet to be binding on Bitdeer alone. Ayrton offers no basis for this Court to discard the principle that "[u]nless both parties to a contract are bound, so that either can sue the other for a breach, neither is bound." *Oscar Schlegel Mfg. Co. v. Peter Cooper's Glue Factory*, 231 N.Y. 459, 462 (1921).

Nor do Ayrton's other arguments fare any better. *First*, as to the Term Sheet's penalties, Ayrton concedes that the break-up fee is a liquidated damages clause—but Ayrton claims the "right to participate," which is triggered by the same underlying breaches that give rise to the break-up fee, is neither a penalty nor a liquidated damages clause. Bitdeer is aware of no case (and Ayrton cites none) that has ever followed Ayrton's proposed reasoning. *Second*, Ayrton continues to insist that it did not waive its "right to participate" in the Tether transaction when it failed to invoke that right in the eight days between when it learned of the transaction and when the transaction closed, but Ayrton never addresses the legal principle that all contractual options must be exercised within a reasonable time. *Third*, Ayrton cites one case in favor of its ability to recoup the damages that belong to the Alto Fund, but that case explains why Ayrton cannot do so.

Bitdeer's Summary Judgment Motion should accordingly be granted.

## ARGUMENT

### I. THE TERM SHEET IS VOID FOR LACK OF CONSIDERATION.

Ayrton's Opposition still fails to identify any consideration that Ayrton was required to give to Bitdeer under the Term Sheet. The closest Ayrton comes is by stating that the Term Sheet

"contemplated the commitment of Ayrton's time and resources through due diligence and negotiation of final transaction documents," ECF No. 146 ("Opp.") at 6, but Ayrton cannot identify any language in the Term Sheet that supports that claim. In fact, although Ayrton's Rule 56.1 Counter-Statement, *see* ECF No. 147, disputes that the Term Sheet imposes no obligations upon Ayrton, the only consideration Ayrton identifies is in the "Diligence and Legal Fees" provision which Ayrton claims obligated it to "pay any fees in excess of $350,000 and to provide documentation to the Company with respect thereof if, and only if, a closing occurred." *Id.* at ¶ 27. But the Term Sheet actually says that "[a]ny fees in excess of $350,000 ***will be withheld from the closing amounts***," meaning that Bitdeer was always intended to be fully responsible for Ayrton's diligence fees. *Id.* at ¶ 26. And even if this quoted language could amount to consideration, Ayrton never acknowledges that the Term Sheet's "binding" Preamble allows it "at its sole discretion" to withhold performance of "any obligation or commitment"—including any obligation to perform diligence. *Id.* at ¶ 22; *Chiapparelli v. Baker, Kellogg & Co.*, 252 N.Y. 192, 200 (1929) ("Where a promisor retains an unlimited right to decide later the nature or extent of his performance, the promise is too indefinite for legal enforcement."); *Massapequa Union Free Sch. Dist. v. N.Y. State Bd. of Regents*, 2025 WL 3182580, at *23 (E.D.N.Y. Nov. 14, 2025) (contract lacks consideration where plaintiff's promises "are entirely optional").

Because the Term Sheet is facially devoid of consideration, Ayrton suggests once more that consideration can be implied. Opp. 6. But no case cited by Ayrton involved a court inferring consideration where, as here, the alleged contract required the promisor to do nothing and accorded the promisor an unqualified right to withhold performance. Each of Ayrton's cases instead involved ***express*** rights given up by the plaintiff or obligations incurred by the plaintiff, both of which are missing from the Term Sheet. *See Vinifera Imports Ltd. v. Societa Agricola Castello*

*Romitorio SRL*, 2020 WL 1184962, at *7 (E.D.N.Y. Mar. 12, 2020) (plaintiff expressly gave up the right to terminate the parties' business arrangement in exchange for defendant's exclusivity); *Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 578 F. Supp. 3d 467, 500-01 (S.D.N.Y. 2022) (plaintiff expressly agreed "to provide services" or "pay [defendant] if it did not desire to do so").

Ayrton's final recourse is to claim that consideration either exists, should be implied, or is not required whenever the parties express an intent to be bound. Opp. 6-7. Consideration and mutual intent to be bound, however, are two distinct requirements for contract formation, and Ayrton cites no case in which mutual intent cured a lack of consideration. *Hinson v. Phillips Auctioneers LLC*, 2019 WL 6334715, at *3 (S.D.N.Y. Oct. 29, 2019) ("The elements of contract formation are: . . . (3) consideration, . . . ***and*** (5) mutual intent to be bound." (emphasis added)); 2 CORBIN ON CONTRACTS § 5.3 (distinguishing consideration and intent to be bound). The mere fact that the Term Sheet labels certain terms as "binding" cannot remedy the absence of consideration where, as here, all "binding" provisions imposed obligations on Bitdeer alone. *See, e.g.*, *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 157 (2d Cir. 2016) (contrasting Pennsylvania law, "which provides that a promisor's express statement of his intent to be bound satisfies the requirement of consideration," with New York law, which does not); *Space Imaging Eur., Ltd. v. Space Imaging L.P.*, 38 F. Supp. 2d 326, 338 (S.D.N.Y. 1999) ("The lack of consideration further evidences the lack of any *mutual* intent to be bound by the Provision." (emphasis in original)); *Mizuna, Ltd. v. Crossland Fed. Sav. Bank*, 90 F.3d 650, 658 (2d Cir. 1996) ("A valid contract requires a manifestation of *mutual* assent to *a bargained-for exchange*." (emphasis added)).

To the extent the Court considers extrinsic evidence to determine whether the parties intended for Ayrton to be bound by any obligations, this Court should not give effect to Ayrton's belated attempts to rehabilitate the testimony of its chief negotiator and corporate representative.

*See* Ayrton's Rule 56.1 Counter-Statement at ¶ 31 ("Q. So you understand, cause I think you told me, that Ayrton is not legally bound under this term sheet to do anything. Do you agree with that? A. Agreed, yup."). Despite having conceded that Ayrton intended to take on no obligations under the Term Sheet, Ayrton's chief negotiator claims in an affidavit that he "unequivocally did have" "an obligation to negotiate the transaction documents in good faith." Gladstein Decl. Ex. 62 at ¶ 10;[1] *see also* Opp. 14 (claiming that Ayrton's chief negotiator spent "more than half of his time" negotiating with Bitdeer). There is simply no way to square this self-serving affidavit with the witness's own sworn testimony. *See* Ayrton's Rule 56.1 Counter-Statement at ¶ 32 (witness agreeing that "even in the scenario where a day after the term sheet is signed Ayrton decides it doesn't want to do the deal, Ayrton's position . . . is the 30-day [exclusivity] restriction applies even in that scenario."); *Skyline Risk Mgmt., Inc. v. Legakis*, 733 F. Supp. 3d 316, 328 (S.D.N.Y. 2024) (rejecting affidavit on summary judgment where contradicted by witness's own deposition testimony). Nor did Ayrton produce any documents in discovery to support the witness's bald assertion that he "recall[s] spending a significant portion of my day working on the transaction." Gladstein Ex. 62 at ¶ 6; *see also Cestaro v. Prohaska*, 681 F. Supp. 3d 121, 125 (S.D.N.Y. 2023) ("A conclusory contradiction of undisputed evidence in a self-serving affidavit, unsupported by other evidence, is not by itself sufficient to create a genuine dispute of material fact.").

The Term Sheet is therefore not an enforceable contract.

## II. THE CONFIDENTIALITY & EXCLUSIVITY PROVISION IS A PENALTY.

According to Ayrton, the break-up fee in the Confidentiality and Exclusivity Provision is a liquidated damages clause. Opp. 10. But the "right to participate," which is triggered upon the

[1] Exhibits to the Declarations of Renita Sharma (ECF Nos. 110 and 137) are identified as "Sharma Decl." exhibits. Exhibits to the Declarations of Andrew Gladstein (ECF Nos. 122 and 148) are identified as "Gladstein Decl." exhibits.

same underlying breach of confidentiality and exclusivity that gives rise to the break-up fee, is neither a liquidated damages clause nor a penalty. *Id.* Instead, according to Ayrton, it is an "independent right of participation," *id.*, that is contingent upon the "closing of a third-party transaction during exclusivity," *id.* at 12 n.4. This argument makes no sense.

*First*, the Term Sheet purports to entitle Ayrton to the break-up fee and the right to participate if, ***and only if***, Bitdeer "breaches any of the confidentiality and exclusivity prohibitions outlined in this section." Ayrton's Rule 56.1 Counter-Statement at ¶ 24. Where, as here, contractual rights are triggered upon an underlying breach, those rights (irrespective of their form) are subject to judicial scrutiny as unenforceable penalties. *See NML Cap. v. Republic of Argentina*, 621 F.3d 230, 236-37 (2d Cir. 2010) (penalty provisions are those triggered by an underlying breach); *Of A Feather, LLC v. Allegro Cred. Servs., LLC*, 2023 WL 2415607, at *2 (2d Cir. Mar. 9, 2023) (fee due "on breach" is "subject to review as an excessive penalty"); *LG Cap. Funding, LLC v. Accelera Innovations, Inc.*, 2018 WL 5456670, at *14 n.12 (E.D.N.Y. Aug. 13, 2018) (higher interest rate "activated upon a defined breach" it was "subject to the same level of scrutiny as other varieties of liquidated damages provisions" (cleaned up)); *see also, e.g.*, *172 Van Duzer Realty Corp. v. Globe Alumni Student Assistance Ass'n, Inc.*, 24 N.Y.3d 528, 536 (2014) (lease acceleration clause triggered upon breach is "subject to judicial scrutiny" as "a penalty"). Bitdeer cited several of these cases in its Opening Brief, ECF No. 108 ("Op. Br.") at 18, but Ayrton acknowledges none of them and instead incorrectly asserts that Bitdeer "offers no support" for its contention that penalties cannot be enforced unless they are liquidated damages clauses, Opp. 10. *See also* 11 CORBIN ON CONTRACTS § 58.1 ("While parties are not empowered to provide for penalties in the event of a breach, they can under certain conditions determine in advance what damages will be assessed in the event of a breach."); *Cray v. Nationwide Mut. Ins. Co.*, 136 F.

Supp. 2d 171, 180 (W.D.N.Y. 2001) (no penalty where forfeiture "is not contingent upon a breach of the contract"); *Wawa, Inc. v. Mastercard Int'l, Inc.*, 2023 WL 6147177 (similar).

*Second*, Ayrton's attempt to liken the right to participate to an enforceable right of first refusal or some other "contingent" right also fails. Opp. 11. Unlike a traditional right of first refusal—which is common in financing transactions—the Term Sheet only gives Ayrton a right to participate if Bitdeer breaches an underlying confidentiality or exclusivity obligation. That fact distinguishes this case from other cases in which parties bargain for a freestanding right of first offer or first refusal that is independent of any underlying breach. If the Term Sheet permitted Bitdeer to *either* honor its confidentiality and exclusivity obligations *or* provide the right to participate, then Bitdeer's "selection of either alternative completely discharges [Bitdeer's] duty and earns the performance that was promised in exchange." 11 CORBIN ON CONTRACTS § 58.18. But here, Ayrton claims the break-up fee as liquidated damages for Bitdeer's breach of its exclusivity obligations, Opp. 12, while simultaneously claiming alternative performance in the form of the right to participate. Bitdeer is unaware of any case (and Ayrton cites none) in which any court has ever enforced half of a penalty as a liquidated damages clause while enforcing the remainder as a form of alternative performance, as Ayrton appears to argue here.

*Third*, Ayrton continues to maintain that the "right to participate" is not a penalty because, "[h]ad Bitdeer honored Ayrton's participation right, it would have been forced to pay nothing beyond Ayrton's small break-up fee." Opp. 15. This reasoning is circular. Ayrton essentially claims: "If Bitdeer paid the penalty of the participation right, then the remaining penalty would be enforceable." Ayrton also overlooks that its "participation" in the Tether transaction would have required an issuance of new shares to Ayrton, thereby diluting the value of Bitdeer's shares. These detrimental impacts are only compounded by the fact that Ayrton is seeking better terms

than those that were given to Tether in a market-price transaction, effectively claiming a forfeiture of Bitdeer stock at significantly below its then-market-value. *See* ECF No. 135 at 14; *see Atlantis Mgmt. Grp. II LLC v. Nabe*, 216 A.D.3d 526, 527 (1st Dep't 2023) (invalidating penalty requiring defendant to "forfeit his partnership interest for $1 per share, irrespective of the actual value of that interest," Opp. 11). Despite having previously claimed that penalties can only be "a fixed cost," ECF No. 120 at 10, Ayrton now appears to concede that New York law forbids penalties in the form of forfeitures, Opp. 11-12, just as it has for more than 200 years. *See, e.g.*, *Skinner v. White*, 17 Johns. 357, 357 (N.Y. 1819) ("A court of equity relieves against penalties and forfeitures where the case admits of a certain compensation."). Ayrton's arguments that the "right to participate" is not subject to scrutiny as a penalty are accordingly meritless.

*Fourth*, Ayrton does not even attempt to argue that the "right to participate" satisfies the criteria for a liquidated damages provision, namely that (i) Ayrton's damages from a breach of confidentiality and exclusivity were not "readily ascertainable" at the time of contracting and that (ii) the break-up fee and the forfeitures required by the right to participate are not "conspicuously disproportionate" to those "foreseeable losses." *JMD Holding Corp. v. Cong. Fin. Corp.*, 4 N.Y.3d 373, 380 (2005). Instead, Ayrton readily admits that Ayrton could only recover its out-of-pocket costs if Ayrton had "sued Bitdeer for failing to consummate the transaction contemplated in its own Term Sheet," *i.e.* if Ayrton had sued for a breach of exclusivity (as it did). Opp. 12. But Ayrton continues to pretend that these purported underlying breaches are somehow irrelevant to the validity of the right to participate. Because the Term Sheet entitles Ayrton to the break-up fee and the right to participate ***only if*** Bitdeer breached its exclusivity or confidentiality obligations, the break-up fee and the right to participate ***must together*** approximate Ayrton's damages from ***those underlying breaches*** to be enforceable. *JMD*, 4 N.Y.3d at 380. Ayrton does not seek to

justify the right to participate on this basis. Ayrton likewise does not deal with the fact that this Term Sheet already required Bitdeer to cover all of Ayrton's costs of negotiation—such that Ayrton has no damages at all apart from those mandated by the Term Sheet's penalties.[2]

*Finally*, while Ayrton attempts to justify the break-up fee (but not the right to participate) in relation to the damages flowing from a breach of exclusivity, Ayrton nowhere acknowledges that the break-up fee and the right to participate are also triggered for breaches of confidentiality. Accordingly, if Bitdeer had informed a third-party about the Term Sheet in breach of the confidentiality obligation, Ayrton would have been entitled to a right to participate and a break-up fee—including, apparently, if Bitdeer closes a transaction with Ayrton. Similarly, if Bitdeer sought a third-party term sheet but ultimately closed a transaction with Ayrton anyway, Ayrton would still be entitled to the Term Sheet's penalties. Penalties that apply indiscriminately to breaches that cannot be expected to cause comparable damages are invalid. *See, e.g.*, *Atlantis*, 216 A.D.3d at 527 (invalidating penalty purporting to remedy "any act in contravention of the [contracts], without limitation."); *Bradford v. New York Times Co.*, 501 F.2d 51, 57 (2d Cir. 1974) ("a fixed amount for any breach irrespective of its gravity or the probable damage to be contemplated might well classify the clause as an unenforceable penalty.").

For all of these reasons, the Term Sheet's penalties cannot be enforced.

---

[2] Ayrton also appears to claim that its actual damages are irrelevant. Opp. 15. But the penalties must be proportionate to Ayrton's ***foreseeable*** losses at the time of contracting, *JMD*, 4 N.Y.3d at 380, and this Term Sheet requires Bitdeer to cover any loss Ayrton could ever sustain from a breach of exclusivity. *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 71 (2d Cir. 2004) (invalidating penalty where "where the contractual language and attendant circumstances show that the contract provides for the full recovery of actual damages[.]"). Moreover, courts routinely decline to enforce even valid liquidated damages clauses where the plaintiff suffered no actual damages. *Cent. Irrigation Supply v. Putnam Country Club Assoc., LLC*, 57 A.D.3d 934, 935 (2d Dep't 2008); *Prada USA Corp. v. 724 Fifth Fee Owner LLC*, 2021 WL 2126109, at *2 (N.Y. Sup. Ct. May 25, 2021). Ayrton identifies no case enforcing a break-up fee in which the plaintiff's full out-of-pocket costs were already covered by the relevant contract.

## III. AYRTON HAD AN OPPORTUNITY TO PARTICIPATE IN THE TETHER TRANSACTION, BUT CHOSE NOT TO.

Ayrton does not explain how Bitdeer breached its purported obligation to provide Ayrton a right to participate when Bitdeer informed Ayrton of the Tether transaction eight days before that transaction closed and Ayrton did nothing. Ayrton argues that the relevant legal test is waiver. Opp. 16-17. Ayrton is wrong. Where a contract does not limit the time period for exercise of an option, New York law requires that the option "be acted upon . . . or abandoned within a 'reasonable time.'" *Fitzpatrick v. Woodruff*, 96 N.Y. 561, 565 (1884); *ADYB Engineered for Life, Inc. v. EDAN Admin. Servs. (Ireland) Ltd.*, 2024 WL 2125431, at *10 (S.D.N.Y. May 10, 2024) (same). Ayrton nowhere explains how it could possibly be reasonable for a "right to participate" to permit the "participating" party to observe the profit outcomes of an investment and only then opt to participate on more favorable terms than those offered to the initial counter-party.

## IV. AYRTON CANNOT RECOVER THE ALTO FUND'S DAMAGES.

Ayrton offers no basis upon which this Court could displace the black-letter principles that (i) Ayrton cannot assert the legal rights of its affiliates and (ii) Ayrton's damages must put Ayrton (and not the Alto Fund) in the same economic position it would have occupied had there been no breach. Instead, Ayrton argues that "Bitdeer does not suggest that the Alto B Fund was a signatory to the Term Sheet or held a right to enforce its terms." Opp. 18. Not so. Bitdeer expressly argued that "the Alto Fund could also have brought claims against Bitdeer but did not do so," whether as a party or a third-party beneficiary of the Term Sheet. Op. Br. 25. Ayrton relies on *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 772 F.3d 740 (2d Cir. 2014), for the proposition that Ayrton can recover on behalf of the Alto Fund. Opp. 18. That case explained that parties to a contract ***and*** third-party beneficiaries each have standing to sue for breach (a principle that Bitdeer does not contest), ***but each party or third-party beneficiary can only sue to recover its own damages:***

> It is no sufficient answer that the rights of the contracting party to enforce the promise made to it would be protected through a suit brought by the third-party beneficiary. There are many likely reasons why the third-party beneficiary cannot be depended upon to sue and thus protect the interest of the party that secured the promise. Consider for example a hypothetical case. Suppose the plaintiff is an agent ("Agent"), and Agent has contracted with a performer ("Performer") for 25% of the revenues Performer receives through Agent's efforts. Agent then makes a contract with a leading nightclub ("Club"), in which Club makes a commitment to Agent that it will book Performer to perform for four weeks for a fee of $50,000 per week. Agent promises in return to secure Performer's performance. Club then renounces the contract, refusing to book Performer. As a result of Club's breach, Performer, the third-party beneficiary, has suffered a loss of fees of $200,000, and Agent has suffered a loss of the $50,000 he would have earned as a percentage of Performer's fees.
>
> Without question, Performer could sue Club, but Performer may not wish to do so, because Performer reasonably believes that suing Club would harm Performer's prospects of obtaining future work. Agent's only recourse to recover his loss is to sue Club *for his $50,000 loss*, based on Club's breach of the contractual commitment it made directly to Agent. Agent's suit would allege: The defendant Club contracted with me to book Performer for four weeks at $50,000 per week. Club breached the contract. *I had a contractual entitlement with Performer to 25% of her $200,000 fee. I suffered a loss of $50,000 resulting from the defendant's breach.*

*NAF Holdings*, 772 F.3d at 747 (emphases added).

*NAF Holdings* thus offers the illustrative example of an Agent seeking to recover his cut of fees he would have generated for booking a Performer at a Club. It does not stand for the proposition that the Agent can recover his own damages ***and*** those of the Performer. But here, Ayrton seeks the damages it purportedly suffered ***and*** the damages that the Alto Fund purportedly suffered, all while adducing no evidence that Ayrton itself would have had any interest in any investment in Bitdeer beyond the fees it would charge to the Alto Fund. *See* Ayrton's Rule 56.1 Counter-Statement at ¶¶ 6-8. Ayrton likewise does not dispute that it avoided bringing claims on behalf of the Alto Fund to preserve the Court's diversity jurisdiction. *See* Op. Br. 25 n.4. It must live with the consequences of that gamesmanship.

**<u>CONCLUSION</u>**

For the reasons stated above, Bitdeer's Motion for Summary Judgment should be granted.

Dated: New York, New York
December 5, 2025

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/ Renita Sharma*

Michael B. Carlinsky
Renita Sharma
Anil Makhijani
Daniel Sisgoreo
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
michaelcarlinsky@quinnemanuel.com
renitasharma@quinnemanuel.com
anilmakhijani@quinnemanuel.com
danielsisgoreo@quinnemanuel.com

*Attorneys for Defendant*
*Bitdeer Technologies Group*